May it please the court, counsel. Good morning, your honors. Happy Kamehameha Day. William Domingo on behalf of Robert Sohnrey. Yes, I am the primary attorney who was in Mr. Aguilar's case. I'm not prepared to argue at this point. Your honor, we did try to submit this without Evans-Martinez, which was argued April 7th, 2006. And we understand that the mandate is not issued at this point, but I'm here to argue that the Sohnrey case is identical to the Evans-Martinez case. We had an upward departure, which was granted by Judge Ezra, the same judge in the Evans-Martinez case, without any notice to us at the point of sentencing. We believe it is plain error and that it is substantial rights as far as the arguing and the full adversary testing of the issues were affected. And we should have reversal based on that. Would an objection anticipating Evans-Martinez have been futile if it had been made at the time of the sentencing? Even as far as we objecting to the judge's notice or object for an upward departure? Yes. I'm not sure, your honor, as far as that, because I believe that Judge Ezra. Now, maybe this is all controlled by Evans-Martinez, but when we're deciding whether something is plain error, the usual rule is that you determine at the time the trial court acts whether the error was plain. Well, of course, Evans-Martinez didn't exist at that time. Yes. So there's an exception to the plain error rule that says if the law is clearly established the other way against you, you're not required to make a futile motion. And then if a case later comes along that upsets that, we will say, well, it's enough that the error is plain at the time we're looking at it. That's the source of my question. Yeah. Was their law the other way, sufficiently established, that it would have been useless to raise the issue at sentencing? Can you explain that again, your honor? I'm not sure what you're trying to get at. Normally, when we're deciding whether an error is plain, we look, would it have been plain to the trial judge at the time the trial judge acted? There's an exception that if the law was totally hostile to you, and then after the trial judge acted, there's an intervening decision that completely changes the law, then we can look at it and say, well, we'll consider it good enough if the error was plain at the time of appeal. You know, at the time of our decision. Yeah. Because we can excuse you not making a motion when the motion would have been clearly foreclosed by contrary authority. And I just wondered if there is any here. Well, we have rule 32H, your honor, and Burns decision. We'll just rest on what happened. Well, Burns might do it. Maybe. Maybe that would do it for you. Excuse me. Evans Martinez, I believe, controls in this matter, your honor. We have we were going into sentencing thinking that we're going to get a level 17. You know, further to the point that Judge Canby is making, this was clearly the rule pre Booker. So it would seem that it would be something that counsel would argue and argue rather vigorously. That's correct. Because it had been in the rule previously. We were arguing against the two upward departures and one based on sophisticated means and everything else. As far as what I can remember, your honor, as far as when Judge Ezra made his decision, it was rather quickly that he was going to go up to the 60 month. And we're pretty stunned at that point. And trying to appease my client at that point. Objection was not thought of at that point. We are, I guess, because your client was very unsympathetic that the court gave him what he could. Yes, your honor. The right of allocation is a double-edged sword at times. How do we measure prejudice? Let's say it is there. Not to give notice. Well, if you look at it, the fact that it was a 46, 37 to 46 is the range that we ultimately ended up with prior to Judge's upward departure. And it would be just based on a 14 month. Well, sure. There's an increase in sentence. But I guess what I'm saying is, how do we tell we remand and say, OK, now he's got notice, resentence. And the judge says, OK, I'm going to give the same sentence all over again. Well, I could give him a longer sentence. Yeah. Well, at that point, we probably could have had to see whether or not there any witnesses we could bring on our behalf. Any other documentary evidence which we could use to to to argue against the sophisticated means of probably advise my client to say different things that he did at that sentencing. Speculation at this point. But, you know, if we did have noticed that he was thinking about the 60 month upward departure, we would definitely have not refused to or not allowed to have the statements by the agents as go it across examination to the likes of. Well, you have 60 months. It's a light sentence in the federal system. I understand. I'm doing a murder case tomorrow. So 60 months is not a problem. But as far as Mr. Asari and expecting to be out probably within two and a half, three years, the extra two and a half years did prejudice him at this point. One reason we wanted this case argued was that the mandate hasn't gone down in the Martinez case and because it is a new unprecedented rule. There may be some reaction within the court as to whether that is really the correct rule. Yes. I just wish I would expect the argument to tell us why the government to tell us why it's not correct. Although I'd like to also submit that Mr. Hino did want to do this without argument. Well, we kind of think that it's good to ventilate these things in court. Thank you. It's nothing further. That looks good on your resume, too. Thank you. Good morning, Tracy. You know, Assistant U.S. Attorney, your honor, in spite of what you just said, in light of Evans Martinez, the government is willing to concede consistent with the department's position that Rule 32H notice should have been given in this particular case. Does that require a revamp? No, your honor, because we still have to go through the plain error analysis. And in this particular case, the court departed upward for two reasons. The first reason, the primary reason, was because of the extensive nature of the crime. And I think the first thing to look at here is what were the facts underlying the court's decision to depart upward? What were the facts supporting the court's decision to depart upward based on the extensive nature of the crime? That's important in this case because the facts were not disputed at all. They were agreed to in the plea agreement. Mr. Domingo did not file an objection to the factual summary contained in the pre-sentence report. And in an abundance of caution in this case, because we were seeking so many sentencing enhancements, I did submit to the court far in advance of trial three declarations prepared by three different special agents from three different agencies detailing the offense in detail. And I also gave the district court notice and Mr. Domingo notice that I would be proffering those declarations as the direct testimony of those agents at the sentencing proceedings, which is in fact what I did. Mr. Domingo waived cross-examination. The court also didn't have any questions. So basically, as far as the issue of the extensive nature of the offense. How long before sentencing did Mr. Domingo get those affidavits? Well, I filed three of them, Your Honor, and I would say one of them two weeks, probably one of them three weeks, maybe even one of them one week ahead of time. And those are all contained in my supplemental excerpts of record. But that's important because as far as the issue that the court ruled on, or the court departed upward on, that was an issue in which the defendant essentially had the opportunity to have a mini-trial if he so desired, but he didn't have any questions. Now, as far as whether or not the failure to effect, whether or not Mr. Domingo had the opportunity to argue in that regard, Mr. Domingo in his opening brief argues that the court's enhancement for sophisticated means was the same enhancement that the court applied for the extensive nature of the crime. So that is also a double-edged sword because Mr. Domingo did have an opportunity to argue against the sophisticated means enhancement, which is what he did. He joined in probation's argument, which was not in favor of the government's request for that enhancement. The court did rule in the government's favor, and after the guideline range had been determined, Mr. Domingo had a second opportunity to argue relating to the sophisticated means enhancement, the extensive nature of the crime. And he basically argued the only thing he could argue, that the reason why the crime was so extensive in terms of time, eight years for the Social Security offense, nine years for the failure to pay child support offense, the reason why the offense was so extensive in terms of the number of Social Security claims that had been made, the reason why he hadn't paid child support for so many months over that period of time was basically because he was trying to start a new life. And all of these collateral consequences, or what he tried to portray as collateral consequences, were just the result of the fact that the defendant had got away with what he was doing with for such a long time. So as far as adversarial testing of that particular issue, once again, the facts were fully litigated, and Mr. Domingo had two opportunities to address that issue. Also, if you look at Judge Ezra's basis for departing upward there, he found that, again, relating to the extensive nature of the offense, that the time period was long, and also that there were a lot of specific instances of misconduct. I specifically argued that those were not taken into account by 2B1.1. And once again, those issues were litigated. As far as the second basis for the court's decision to depart upward, that being the defendant's lack of credibility in court, what do we have in terms of the factual basis for that? Well, the defendant basically made a statement. He said that he committed one of the crimes, the stealing of the Social Security money, and that he used it for altruistic purposes. And, you know, what more could Mr. Domingo have argued to counter, have countered that? I mean, that was something that happened in court. That was something the court observed. The court found that explanation to be preposterous. It was just basically a credibility determination. So once again, this particular issue was, in fact, tested in court. And the final argument I wanted to make is I also moved for enhancements based upon, sentencing enhancements based upon use of minor in the commission of the offense and also the defendant's aggravating role in the offense. And I believe that I should have prevailed on both of those objections, on both of those objections to the sentencing report. And the reason why I think that's important is because if the court had ruled properly on those two sentencing enhancement objections that I had made, the defendant's guideline range would have been increased four levels. And if so, the sentence that was imposed by the court would have, in fact, fallen within the applicable guideline range. And for those reasons, Your Honor, this case is factually and legally distinguishable from Evans-Martinez. And I think the court can be very confident that the issues which gave rise to Judge Ezra's decision to depart upward were, in fact, fully tested in court in a full blast adversary here proceeding. Thank you. To say now that if he had gotten the other two enhancements would bring it up, he wouldn't be here. It's not fair. And I guess one of them was the use of his son, who is a minor. And he was trying to use the fact that he had his son and used his son's name in the same situation. And Judge Ezra did not go for that particularly. I would just like to argue again that had we known prior to sentencing that Judge Ezra was intending to go against the pre-sentence report, the probation office who did their own investigation, we had an opportunity to look at all these affidavits to see the extensive nature or non-extensive nature of it. And the pre-sentence report and the probation officer did not recommend that a sophisticated means enhancement be allowed. Had we known all of that, then I would probably have handled the sentencing differently and argued several things. I can't say what I would at this point. But if we had noticed all that, we would probably have had a better way to have a full and fair adversarial. Did you have actual notice of some of the bases for the upward departure? The extent of the whole, it was over a long period that he had left one wife, refused to pay or did not pay, married another woman and had a child by him. The testimony that Mr. Hino did provide, we had. And we had an opportunity. It was a case we had for a while. And I knew what the agents were going to say. And like I said, I was confident in the fact that the probation office itself did not feel that in this situation, sophisticated means or any other upward departure was warranted. And only until after Mr. Sonry spoke with Judge Ezra that I was not surprised that that was given. Thank you. Thank you. Matter stands submitted.
judges: B.fletcher, Pregerson, Canby